930 A.2d 477 (2007)
395 N.J. Super. 632
Carol JONES and Caraden, Inc., Plaintiffs-Appellants
v.
DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF CODES AND STANDARDS, BUREAU OF ROOMING AND BOARDING HOUSE STANDARDS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 17, 2007.
Decided August 24, 2007.
*478 Mark L. Hopkins, Long Valley, for appellants.
Stuart Rabner, Attorney General, attorney for respondents (Patrick DeAlmeida, Assistant Attorney General, of counsel; Debra A. Allen, Deputy Attorney General, on the brief).
Before Judges KESTIN, PAYNE and LIHOTZ.
The opinion of the court was delivered by
KESTIN, P.J.A.D. (retired and temporarily assigned on recall).
This matter is before us on an order of transfer from the Chancery Division because of jurisdictional considerations. See R. 1:13-4; R. 2:2-3(a)(2). Following the transfer, defendant, Bureau of Rooming and Boarding House Standards (Bureau) in the Division of Codes and Standards in the Department of Community Affairs, moved for a final remand and to supplement the record. We denied the former motion and reserved disposition on the latter.
After fully considering the record, in the light of the arguments advanced by the parties and prevailing legal standards, we now remand the matter to the agency for re-transmittal to the Office of Administrative Law (OAL) for a contested-case hearing and initial decision on all issues and reference, in turn, to the agency head for final decision. See N.J.S.A. 52:14B-10. We dismiss the pending motion to supplement the record, without prejudice, subject to such determinations as the administrative law judge (ALJ) assigned to the case may make in the conduct of the hearing regarding the record and the receipt of evidence and argument.
As far as we can tell from the record on appeal, issues between the parties date from 2001, when they entered into a settlement agreement in respect of alleged violations of the Rooming and Boarding House Act of 1979 (the Act), N.J.S.A. 55:13B-1 to -21, regarding property in Cinnaminson, in which the individual plaintiff resided. The instant matter began on January 28, 2004, when the Bureau, based on an investigation, determined that the property was being used as a "boarding house" within the meaning of the Act and that plaintiffs were in violation of N.J.S.A. 55:13B-7. When plaintiffs resisted the citation, the matter was transmitted to OAL *479 as a contested case. Plaintiffs raised a series of constitutional questions based upon the First Amendment and other rights guarantees,[*] as well as procedural due process considerations; and they invoked 42 U.S.C.A. § 1983. The parties' briefs describe differently the procedural events that then transpired.
According to plaintiffs, after they raised "multiple constitutional issues, including the constitutionality of the [Act] and related issues of construction/interpretation[,]" the ALJ
advised he had conferred with the head judge of the OAL and it was determined the OAL did not have jurisdiction to hear and decide such issues, and that if [plaintiffs] wished to pursue same, they would have to go before the Superior Court for relief.
[Plaintiffs] timely proceeded before the . . . Chancery Division . . . on an Order to Show Cause (OSC) basis with Verified Complaint.
According to defendant, the contested case in OAL was scheduled before the ALJ on March 8, 2005.
Due to a last minute request for an adjournment by [plaintiffs] due to the sudden onset of a medical condition, the plenary hearing date was converted to an in-person conference to address all issues relating to the matter, including a pending pro hac vice application and constitutional claims. [The ALJ], at that time, rescheduled the case for plenary hearing on October 17 and 18, 2005, and ordered that the case would not be adjourned except under the circumstance of stay of the proceedings issued by order in the State Superior Court.
The October 17 and 18, 2005 administrative hearing did not go forward because, on September 9, 2005, [plaintiffs] had filed an Order to Show Cause with verified complaint with the . . . Chancery Division, requesting a stay of the administrative hearing.
The parties agree on what happened next. As we have noted, because of jurisdictional considerations, the Chancery Division, on October 12, 2005, transferred the case to us.
Plaintiffs contend that the "action to hear and decide constitutional issues [is] maintainable in the Appellate Division." They then proceed to argue the merits of the constitutional issues and related questions. Defendant Bureau, while contending that a remand for a contested case hearing is required, joins issue on those constitutional questions, arguing that the positions advanced by plaintiffs lack merit.
No court should decide constitutional issues in a vacuum, in the absence of a well-developed record isolating the essential factual questions at their basis and including findings of fact. See American Trucking Ass'ns v. State of New Jersey, 164 N.J. 183, 752 A.2d 1286 (2000); State Farm Mutual Auto. Ins. Co. v. State of New Jersey, 124 N.J. 32, 63, 590 A.2d 191 (1991); Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 140, 179 A.2d 729 (1962). Whether the constitutional issues are framed as facial challenges to statutes or regulations, or asserted deprivations of the claimant's rights in the manner in which such provisions have been applied, or arguments that due process violations have occurred *480 in the enforcement of those provisions, the factual background of the matter must be developed either through stipulated facts or in a litigation process. No such development has occurred in this case to date. If any issues of facial unconstitutionality exist that turn out to be independent of the facts in the case and survive the contested case process, they can be addressed on judicial review. Consideration of any such issues at this time would be premature.
To the extent either or both of the parties now proceed on the basis of a belief that, if the dispute is addressed, in the first instance, in a contested case hearing, plaintiffs will be unable to raise pertinent constitutional arguments before the matter is decided, that belief, irrespective of how it came to be held, is manifestly mistaken. Administrative law judges are clothed with ample authority to rule upon such questions in their initial decisions, to the extent the issues arise legitimately in the context of the contested case hearing and are necessary for a complete disposition of any genuine issue in the contested case; subject, of course, to the agency head's authority to make the final decision in the case, see N.J.S.A. 52:14B-10, and the process of judicial review. See Abbott v. Burke, 100 N.J. 269, 296-303, 495 A.2d 376 (1985). Indeed, all questions that truly bear upon the issues to be resolved in the contested case must be addressed in order to afford the parties the opportunity for the full consideration that is contemplated by the Administrative Procedure Act.
Neither the Chancery Division, nor we, could decide the constitutional issues raised by plaintiffs in the absence of a "complete and informed record," id. at 303, 495 A.2d 376; moreover, this case ought to be fully developed in an administrative proceeding, rather than via a trial in a court, because it is so heavily impacted by the special expertise and insights that administrative agencies bring to such matters. See id. at 301-302, 495 A.2d 376. The eventual result of the process should be a decision in the case that "reflect[s] determinations of appropriate administrative issues as well as the resolution of factual matters material to the ultimate constitutional issues." Id. at 303, 495 A.2d 376. Of course, in order to discharge this responsibility in a way that makes sense, the first-instance decision makers, the ALJ and the agency head, must fully address such constitutional issues raised as are necessary to the decision, and resolve them in principled fashion by their best lights, subject, of course, to judicial review. See Roadway Express, supra, 37 N.J. at 140-42, 179 A.2d 729. Since the basis for this approach is the need to dispose fully of all issues arising in the contested case, and not grounded on inherent authority, any constitutional question not necessary to complete resolution of contested-case issues may not be addressed in the administrative process, but should instead be reserved for resolution in the judicial review phase or independently, thereafter, in a declaratory judgment proceeding. Care should be taken, however, to develop a complete factual record as to all issues.
Even to the extent plaintiffs raise a viable claim under 42 U.S.C.A. § 1983, there is no impediment to first-instance handling on the administrative level. To the extent a particularized factual record needs to be developed in that regard, it would unquestionably be related to the other factual questions that need to be addressed. We discern no reason why, given considerations of efficiency and economy of effort, the factual aspects of the § 1983 claim cannot or should not be developed as part of the contested case proceedings, rather than in a separate civil action that would mirror, in major part, the proofs in the administrative hearing. *481 To the extent any of the remedies contemplated by § 1983 are not available in an administrative proceeding, other supplemental judicial avenues exist. See, e.g., R. 4:42-3; R. 4:67.
Given our determination that this matter must proceed, in the first instance, by way of full exhaustion of administrative remedies in a contested case context, we will not address the particular questions either of the parties have raised in this appeal. Resolution of those questions must await the conclusion of the administrative process and such judicial review as may occur thereafter.
The matter is remanded for further proceedings in accord with this decision. We do not retain jurisdiction. The pending motion to supplement the record is dismissed without prejudice.
NOTES
[*] Plaintiffs have alleged that the individual plaintiff, Rev. Carol Jones, owns the property, known as "Cinnaminson House," and that the corporate plaintiff, Caraden Inc., "a charitable, religious and educational organization, fully recognized under 28 U.S.C.A. § 501(c)(3), [which] is supported by donations from the public, including some guests at the property," carries out charitable operations at the property.