FRED DEPKIN & SON, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. DIRECTOR, NEW JERSEY DIVISION OF TAXATION; NEW JERSEY MOTOR FUELS TAX BUREAU; AND ATTORNEY GENERAL OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 8, 1971—Decided April 8, 1971.

280

Before Judges GOLDMANN, LEONARD and FRITZ.

*Mr. Ralph W. Chandless* argued the cause for appellant (*Messrs. Chandless, Weller & Kramer,* attorneys).

*Mr. Richard M. Conley,* Deputy Attorney General, argued the cause for respondents (*Mr. George F. Kugler, Jr.,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

LEONARD, J. A. D.  Plaintiff appeals from a Law Division order granting defendants' motion to dismiss its complaint and dissolving a temporary restraint which plaintiff had previously obtained.

The uncontroverted affidavits filed with the trial court by the field representatives of defendant Motor Fuels Tax Bureau (hereinafter Bureau), stated that on or about October 6, 1969 plaintiff's tank truck delivered fuel to diesel fuel tanks at a retail diesel fuel outlet, B. O. W. Motors in Little Ferry, New Jersey.  B. O. W. Motors had two 4000-gallon diesel fuel tanks which are connected to a diesel fuel

pump. The pump is marked "diesel fuel" and the price per gallon of fuel is indicated thereon to include federal and state motor fuel taxes. On or about November 17, 1969 at plaintiff's office, plaintiff's president showed the Bureau field representatives records of deliveries made by plaintiff to B. O. W. Motors consisting of approximately 18,128 gallons of fuel oil, during the period from August 15, 1969 through October 6, 1969. The records indicated the dates of delivery, invoice numbers, price per gallon, and total sales price for deliveries during that period. On the same occasion the president told these field representatives that plaintiff had made additional deliveries of fuel to B. O. W. Motors, but he refused to disclose records of those deliveries.

Defendant Bureau wrote to plaintiff's attorney on January 7, 1970 stating that it deemed plaintiff liable for the motor fuels tax on fuel the company had sold because plaintiff had knowledge that the ultimate use of the fuel would be to propel motor vehicles on the highway. The Bureau demanded, pursuant to *N. J. S. A.* 54:50–2, that its representatives be permitted to enter plaintiff's premises for the purpose of auditing its records to determine any such liability. On January 15, 1970 the Bureau again wrote to plaintiff's attorney stating that if plaintiff did not make its records available for an audit by January 31, 1970, the Bureau, by authority of *N. J. S. A.* 54:49–5, would make an arbitrary assessment of the amount of tax due and proceed to take the steps necessary for collection.

Plaintiff instituted this action for declaratory judgment on February 2, 1970, alleging that it was not a taxpayer under the New Jersey Tax Upon Sale of Motor Fuels Act (hereinafter act), *N. J. S. A.* 54:39–1 *et seq.*, and that the Bureau's proposed action would deprive it of its property without due process of law, in violation of the federal and state constitutions. Plaintiff demanded judgment declaring its rights, declaring the imposition of any tax on it by the Bureau to be unconstitutional, and enjoining the Bureau from making the proposed tax assessment.

On February 17, 1970 the Bureau sent a tax assessment notice to plaintiff explaining that part of the assessment was based on actual sales of fuel from August 15 through October 6, 1969, as determined in the prior partial audit of plaintiff's records, and that the remainder of the assessment was projected for the period of January 1 through August 14, 1969.

On February 24, 1970 plaintiff obtained a temporary restraint against both defendants, the Bureau and the Director of the Division of Taxation, by alleging that it would suffer irreparable damage if defendants were able to proceed to docket and collect the tax assessment. The court ordered defendants to show cause why the restraint should not be continued pending final hearing.

Defendants answered the complaint and by way of defense asserted that plaintiff had not exhausted its administrative remedies and was therefore precluded from maintaining the action. They moved for an order dismissing the complaint or, in the alternative, directing plaintiff to seek a hearing of its case before the Division of Tax Appeals.

Plaintiff sent a timely Protest of Tax Asessment to defendant Director on March 16, 1970, preserving its right to an administrative hearing.

Plaintiff's order to show cause and defendants' motion to dismiss were heard on March 26, 1970. The trial judge held that plaintiff's action was premature because there was no imminent danger to it and it had not exhausted its administrative remedies. The temporary restraint was accordingly dissolved and the complaint dismissed. Plaintiff appeals from this judgment.

Plaintiff first contends that the act is unconstitutional upon its face and therefore it is not necessary that it exhaust its administrative remedies by requesting a hearing on the protest filed with the Commissioner, *N. J. S. A.* 54:49–18, or by appealing to the State Board of Appeals, *N. J. S. A.* 54:39–49.

The complaint filed herein did not raise the present specific constitutional argument. Rather, plaintiff sought to have the act declared unconstitutional only as it applied to itself individually. The present attack was raised for the first time when defendants moved to dismiss. Nevertheless, we consider it upon its merits.

Plaintiff bottoms its present contention of unconstitutionality upon the arguments that (1) the act lacks standards for determining who shall pay the tax and (2) *N. J. S. A.* 54:50-2, which gives the Commissioner the power to cause an examination or investigation to be made of the place of business, tangible personal property and books and records of any taxpayer, authorizes an illegal search in violation of the Fourth Amendment. This point and the arguments advanced in support thereof are without merit.

*N. J. S. A.* 54:39-64(b) defines who is subject to payment of the motor fuel tax. It provides:

> Any person purchasing motor fuel on which there has been no charge made to him of the motor fuel tax thereon, if the same be thereafter used or sold for use in the operation of a motor vehicle upon the highways, shall be required to obtain a special license B from the director and shall be required to pay a tax, at the rate per gallon specified in section 54:39-27 of this Title, on the total number of gallons so used or sold for use. * * *

Likewise, motor fuel is defined by *N. J. S. A.* 54:39-2 as being any "liquid" sold for the purpose of "generating power for the propulsion of motor vehicles upon the public highway."

Thus, the act clearly provides standards for determining who pays the tax. Further, these standards are sufficiently definite to insure that the Director does not exceed the allowable limits of delegation of legislative powers to his subordinates. Moreover, the existing administrative and judicial review of any determination made by the Director constitute a safeguard which is "probably of greater significance than further details in the statutory standard."

*Burton v. Sills,* 53 *N. J.* 86, 91 (1968), appeal dismissed 394 *U. S.* 812, 89 *S. Ct.* 1486, 22 *L. Ed.* 2d 748 (1969).

*N. J. S. A.* 54:50–2 does not violate the Fourth Amendment. Essentially, this section of the act authorizes the Director to check with taxpayers as to the basis of their returns. There could be no enforcement of the tax laws if the Director was not authorized to review the records from which the returns are prepared. The inquiry authorized thereunder is within the statutory authority of the Director, the demand is not too indefinite, and the information sought is reasonably relevant to the matters under inquiry. Thus, the statutory authorization is not unreasonable. *Cf. United States v. Morton Salt Co.,* 338 *U. S.* 632, 70 *S. Ct.* 357, 94 *L. Ed.* 401 (1950); *Federal Trade Com'n v. American Tobacco Co.,* 264 *U. S.* 298, 44 *S. Ct.* 336, 68 *L. Ed.* 696 (1923).

*Boyd v. United States,* 116 *U. S.* 616, 6 *S. Ct.* 524, 29 *L. Ed* 746 (1886), and *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1924), both relied upon by plaintiff in support of its contention that the statute authorizes an illegal search, are inapposite. The act authorizes an inspection of the records by the Bureau solely for the purpose of establishing a tax liability. The information secured is not used as the basis for a forfeiture or any criminal proceedings.

Plaintiff's contention that the act is unconstitutional *as applied to it* can best be evaluated after a careful examination of the true nature of the tax and the many detailed facts concerning plaintiffs activities and knowledge in connection with the fuel it sold to B. O. W. Motors. *Roadway Express, Inc. v. Kingsley,* 37 *N. J.* 136, 139 (1962). Under the circumstances, the taking of the necessary evidence and the making of the necessary factual findings and legal determinations should be permitted to rest, in the first instance, with the administrative officials designated by the Legislature for that purpose. *Ibid.* See also *Central R. R. Co. v. Neeld,* 26 *N. J.* 172, 178–181 (1958), *cert.* den. 357

*U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed.* 2d 1371 (1958). Plaintiff, having filed a protest and "preserved its right to a hearing" pursuant to *N. J. S. A.* 54:49–18, should now request an immediate hearing by the Commissioner. If it feels aggrieved by his order or determination, it may then appeal to the State Board of Tax Appeals, in accordance with *N. J. S. A.* 54:39–49. Then, if it so desires, plaintiff may obtain judicial review by the Appellate Division. *R.* 2:2–3(a)(2). Consequently, we find that the interest of justice does not require us presently to make a determination of the issue of the act's unconstitutionality as applied to plaintiff, before plaintiff exhausts the available administrative remedies. See *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952); *R.* 4:69–5.

The case of *Schwartz v. Essex County Board of Taxation,* 129 *N. J. L.* 129 (Sup. Ct. 1942) does not support plaintiff's contention that administrative remedies need not first be exhausted because of the specific constitutional question now raised. The court therein (at 132) approved the practice of by-passing an administrative hearing, only where the "single question presented" involved a determination of the constitutionality of a legislative act on its face. As we have previously noted, there are other factual as well as legal questions present. Further, in view of our conclusion that the act is constitutional on its face, that issue is no longer viable.

Judgment affirmed. We do not retain jurisdiction.