166 N.J. Super. 75 (1979)
398 A.2d 1335
REGISTRAR & TRANSFER COMPANY, PLAINTIFF-RESPONDENT,
v.
DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1979.
Decided February 13, 1979.
*77 Before Judges LORA, MICHELS and LARNER.
Mr. Harry Haushalter, Deputy Attorney General, argued the cause for defendant-appellant (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Assistant Attorney General, of counsel).
Mr. James F. Keegan argued the cause for plaintiff-respondent (Messrs. Pitney, Hardin & Kipp, attorneys; Messrs. Gerald C. Neary and James F. Keegan, on the brief).
The opinion of the court was delivered by LARNER, J.A.D.
The Director of the Division of Taxation appeals from a summary judgment granted to plaintiff Registrar & Transfer Company (Registrar) in an action for declaratory relief. The trial judge determined that receipts from the storage of cancelled stock certificates and miscellaneous related documents are not taxable under the New Jersey Sales and Use Tax Act which imposes a tax on receipts from services of "Storing all tangible property not *78 held for sale in the regular course of business and the rental of safe deposit boxes or similar space." N.J.S.A. 54:32B-3(b) (3). The rationale for this determination is found in the court's opinion reported at 157 N.J. Super. 532 (Ch. Div. 1978).
The Director attacks the propriety of the judgment on two fronts: (1) that plaintiff's action for declaratory judgment was improperly brought in the Chancery Division in that its exclusive remedy was by way of appeal to the Division of Tax Appeals and ultimately to the Appellate Division pursuant to R. 2:2-3(a) (2), and (2) that alternatively, the determination that the receipts from the storage service are not taxable is unwarranted in light of the purpose and intent of the applicable legislation.
We find it unnecessary at this stage of the litigation to embark upon an in-depth discussion of the question whether the trial judge was or was not justified in retaining jurisdiction of the declaratory judgment action. It is sufficient for us to note, as did the judge, that plaintiff's complaint for declaratory relief was properly brought under N.J.S.A. 2A:16-50 et seq. as a means of adjudicating its rights under the tax statute where there existed a bona fide controversy that had not yet reached the stage at which either party could have sought a coercive remedy. See Union Cty. Bd. of Freeholders v. Union Cty. Park Comm'n, 41 N.J. 333, 336 (1964); Washington Tp. v. Gould, 39 N.J. 527, 533 (1963); Rego Industries, Inc. v. American Mod. Metals Corp., 91 N.J. Super. 447, 452-453 (App. Div. 1966); Carls v. Civil Service Comm'n, 31 N.J. Super. 39, 42-43 (App. Div. 1954), aff'd 17 N.J. 215 (1955). And since the issue for determination did not call for the exercise of administrative expertise and was purely a question of interpretation of a statute and its application to undisputed facts, we cannot fault the trial judge for continuing to exercise jurisdiction despite the intervening action of the Director in making a formal assessment while the matter was under judicial consideration.
*79 However, regardless of the basic procedural requirements of our rules relating to administrative appeals (R. 2:2-3(a)(2)) as reflected in Equitable Life Mortg. and Realty Investors v. N.J. Div. of Tax., 151 N.J. Super. 232 (App. Div.), certif. den. 75 N.J. 535 (1977), or the traditional imperative of exhaustion of administrative remedies, the interests of justice dictate that we adopt the extraordinary course of bypassing the administrative agency in this instance in order to decide the merits of the controversy. See Matawan v. Monmouth Cty. Bd. of Tax., 51 N.J. 291, 296-297 (1968). We do so in order to resolve the question of construction of the statute expeditiously, without requiring the parties at this stage of the litigation to go through the process of an administrative proceeding in order to have the issue come before this court at some time in the future. The absence of controverted facts and the lack of need for administrative expertise militate against imposing such substantial delay and expense upon the litigants. See Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 140-141 (1962); Nolan v. Fitzpatrick, 9 N.J. 477, 487 (1952). Under all the circumstances herein, we are satisfied that there is no compelling reason which would justify a transfer at this time. Fairness and justice require that we proceed to determine the merits of the controversy with dispatch.
The trial judge appropriately considered the merits of the controversy on cross-motions for summary judgment, for the issue is clearly one of law as applied to the undisputed operative facts.
Registrar is a registrar and transfer agent for publicly-held corporations. Among the services it renders to its customers is the storage in Jersey City of cartons of cancelled stock certificates and miscellaneous items such as stock powers, assignment forms, corporate resolutions, affidavits, inheritance tax waivers and the like. These cancelled and voided documents are retained for the purpose of preserving the information contained therein for such periods of time as may be requested by the respective corporate customers.
*80 The corporations are entitled to this type of storage for a period of one year as an included service for the annual fee paid by each customer. Thereafter, Registrar bills the customer for the storage of cancelled documents on a quarterly basis, designating this charge on its invoices under Code No. 17. It is these quarterly storage charges which represent the base for the sales tax assessment by the Division of Taxation.
The controlling section of the statute (N.J.S.A. 54:32B-3) provides for a sales and use tax on:
* * * (b) The receipts from every sale * * * of the following services:
(3) Storing all tangible personal property not held for sale in the regular course of business and the rental of safe deposit boxes or similar space.
The "Definitions" section of the act defines tangible personal property as "corporeal personal property of any nature." N.J.S.A. 54:32B-2(g).
The focus of the opinion below and the position of Registrar are centered upon the legalism that stocks, bonds and other evidence of a right or claim against a person or corporation are categorized as "intangible" rather than "tangible" personal property. From this premise, the trial judge reasoned that the cancelled stock certificates and related documents, without intrinsic value and preserved for informational purposes only, do not constitute "tangible personal property," and that the charges for their storage are therefore not subject to the sales tax.
In our opinion, this conclusion is unwarranted. Not only is it contrary to the purpose and intent of the legislation, but it is based upon an untenable premise. The trial judge mistakenly assumed that stock certificates and accompanying documents are intangible personal property. He failed to distinguish between the beneficial share of a stockholder in a corporation and the physical stock certificate evidencing that interest. The share in the corporation constitutes a chose in action which is an intangible property *81 right. The certificate itself, however, the document evidencing stock ownership, is considered tangible personal property. See Duncan v. Kelly, 435 S.W.2d 29, 32-33 (Mo. Ct. App. 1968); Strout v. Burgess, 144 Me. 263, 68 A.2d 241, 249 (Sup. Jud. Ct. 1949); Tow v. Evans, 194 Ga. 160, 20 S.E.2d 922, 924 (Sup. Ct. 1942); Mills v. Jacobs, 131 Pa. Super. 469, 200 A. 233, 235 (Super. Ct. 1938), mod. on other grounds 333 Pa. 231, 4 A.2d 152 (Sup. Ct. 1939); Bourland v. State, 133 Tex. Cr. R. 544, 112 S.W.2d 720, 721-722 (Ct. Crim. App. 1937); 18 C.J.S. Corporations § 258 at 723-724. If, therefore, the paper documents herein are tangible personal property, the entire premise for the determination below falls, and the conclusion is rendered unsound.
Returning to the statute itself, it is manifest that the Legislature saw fit to impose a sales tax not only upon the sale of tangible personal property but also upon services of various kinds. And included in the taxable services is the specific mention of storage of all tangible personal property. The definitional compass of "tangible personal property" for the purpose of this statute is clear and unequivocal  "corporeal personal property of any nature."
There can be no question that the various documents involved herein are personal property of a physical nature which can be touched and felt and which take up space requiring storage facilities. As such they are "corporeal" and fall squarely within the statutory definition. Since the tax involved herein is concerned with receipts from the storage service and not with the sale or transfer of the stock certificates or other paraphernalia, it is of little moment whether the pieces of paper or the interest they represent constitute tangible or intangible property as a conceptual definition in the context of other areas of the law.
Whether the label of "tangible property" may have other meanings for other purposes or whether the materials stored herein have or do not have intrinsic value does not change the fact that the imposition of a tax on storage does *82 not depend upon legal niceties applied to the particular property which is stored. The language of the statute should be given its ordinary and generally accepted meaning unless a different meaning is expressly indicated. See Public Service Elec. & Gas Co. v. Woodbridge Tp., 73 N.J. 474, 478 (1977); N.J. Power & Light Co. v. Denville Tp., 80 N.J. Super. 435, 440 (App. Div. 1963). Not only is there an absence of a contrary meaning in the act, but the statutory definition of tangible property accords with its normally accepted sense as "corporeal." To engraft distinctions made by courts in cases involving issues outside the scope of this statute is to invent a purpose beyond the intent of the Legislature. See Febbi v. Div. of Employment Secur., 35 N.J. 601, 606 (1961). As far as the taxability of receipts from storage charges are concerned, the papers or documents constitute corporeal personal property in the sense of this statute.
We consider the trial court's reliance upon Commerce Union Bank v. Tidwell, Tenn., 538 S.W.2d 405 (Sup. Ct. 1976), and Dist. of Columbia v. Universal Computer Associates, Inc., 151 U.S. App. D.C. 30, 33-34, 465 F.2d 615, 618-619 (D.C. Cir.1972), to be inappropriate. These cases deal with an effort to impose a sales tax and a personal property tax on software information utilized in computer technology under a statute providing for taxation of "tangible personal property." Whether or not we agree with the holdings of these courts that such software is nontaxable, it is apparent that the cases are not controlling or persuasive herein where we are concerned with a tax on storage service under an entirely different statute.[1]
Nor are we persuaded that Registrar's use of the label "informational documents" has any significant impact *83 upon the determination of the issue herein. The act of storage is the service which is subject to the tax regardless of the purpose for which the customer seeks the storage service. And so long as the items stored are finite, tangible objects, the storage fees are subject to the tax encompassed by the statute.
The storage of stock certificates, stock powers, corporate resolutions, etc., are no different from the storage of other paper products, whether those papers contain useless or useful information. For example, law firms utilize warehouses for the storage of closed files which may be of some informational value in the future. Can there be any question that the storage fees for that service would be taxable under the Sales Tax Act against the warehouseman, who in turn passes the tax on to his customer? Is there any reason in logic or sense that the storage of documentary material by a corporation should be treated differently?
The language of the Illinois Supreme Court in Time, Inc. v. Hulman, 31 Ill.2d 344, 201 N.E.2d 374 (1964), in considering a sales tax on the sale of magazines, is appropriate in this connection:
The sale of a magazine is essentially not different from the sale of a loaf of bread, or an automobile. While it is true that the utility or value of plaintiffs' magazines is in their content and not the paper and ink with which they are printed, the taxability of the transaction is not determined by weighing the value of the intangible properties of the item of sale, such as form, organization and design, against the value of its tangible properties, such as weight, size and texture. [201 N.E.2d at 377]
In view of the foregoing, we hold that Registrar's charges for storage of the corporate documents involved herein are subject to the sales tax imposed by N.J.S.A. 54:32B-3(b)(3). The judgment below is reversed and set aside and judgment is hereby entered in favor of the Division of Taxation affirming its tax assessment of December 30, 1977 against Registrar.
NOTES
[1] We note that software for electronic data processing under certain criteria is exempt from taxability under the Sales Tax Act as intangible personal property, by regulation of the Division of Taxation of New Jersey. N.J.A.C. 18:24-25(2).